# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CARING PEOPLE HOLDCO, LLC,
CARING PEOPLE MANAGEMENT
SERVICES COMPANY, LLC, CARING
PEOPLE FL OPERATING, LLC, CARING
PEOPLE NJ OPERATING, LLC and
CARING PEOPLE NY OPERATING, LLC,

      Plaintiffs,

      v.

SHALOM (STEVEN) EAST,
CARINGONDEMAND, LLC, and
JENNIFER DEVINE,

      Defendants.

---

SHALOM (STEVEN) EAST and
CARINGONDEMAND, LLC,

      Counterclaim and Third-Party
      Plaintiffs,

      v.

CARING PEOPLE HOLDCO, LLC,
CARING PEOPLE MANAGEMENT
SERVICES COMPANY, LLC, CARING
PEOPLE FL OPERATING, LLC, CARING
PEOPLE NJ OPERATING, LLC, and
CARING PEOPLE NY OPERATING, LLC,

      Counterclaim Defendants, and

SILVER OAK CP, LLC, GREGORY M.
BARR, and ANDREW GUSTAFSON,

      Third-Party Defendants.

C.A. No. 2024-0125-SEM

# ORDER DENYING MOTION IN LIMINE

WHEREAS, on February 12, 2024, Caring People Holdco, LLC, on behalf of itself and its affiliated buyer entities Caring People Management Services Company, LLC; Caring People FL Operating, LLC; Caring People NJ Operating, LLC; and Caring People NY Operating, LLC (the "Plaintiffs") filed a complaint against Shalom (Steven) East and CaringOnDemand, LLC ("COD");[1]

WHEREAS, on March 12, 2024, East and COD answered the complaint, offered five affirmative defenses, and submitted counterclaims against the Plaintiffs, as well as third-party claims against Silver Oak CP, LLC, Gregory M. Barr, and Andrew Gustafson;[2]

WHEREAS, on April 22, 2024, the Plaintiffs filed an amended complaint against East, COD, and newly added defendant Jennifer Devine (the "Amended Complaint");[3] through the Amended Complaint, the Plaintiffs pled eleven counts for: (I) breach of contract: non-competition covenant (against East); (II) breach of contract: non-solicitation covenant (against East); (III) breach of contract: confidentiality covenant (against East); (IV) breach of contract: Holdco agreement (against East); (V) breach of contract (against Devine); (VI) breach of implied

---

[1] Docket Item ("D.I.") 1.

[2] D.I. 26.

[3] D.I. 45 ("Am. Compl.").

covenant of good faith and fair dealing (against East and Devine); (VII) breach of incentive units agreement (against East); (VIII) breach of incentive units agreement (against Devine); (IX) breach of fiduciary duty (against East); (X) tortious interference with contractual relations (against East); and (XI) tortious interference with contractual relations (against COD);[4]

WHEREAS, on July 25, 2025, I dismissed Count XI against COD; COD remained a party through the counterclaims and third-party complaint;[5] thereafter, on September 19, 2025, I denied the parties' requests for leave to file motions for summary judgment;[6]

WHEREAS, on September 30, 2025, the Plaintiffs filed a motion to compel discovery from East;[7] that same day, East filed a motion *in limine* to exclude the expert report and testimony of Joseph W. Thompson (the "Motion");[8] I heard oral argument on both motions on October 29, 2025, denied the motion to compel, and took the motion *in limine* under advisement;[9] through the Motion, East does not dispute Mr. Thompson's qualifications, but instead takes issue with the fact that for

---

[4] Am. Compl. ¶¶ 63–137.

[5] D.I. 169.

[6] D.I. 186.

[7] D.I. 194.

[8] D.I. 195 ("Mot."). Devine joined in the Motion. D.I. 196, 207.

[9] D.I. 212.

the purposes of the damage calculation, Mr. Thompson assumes liability has been found and calculates the "damages period" through 2027;[10] I am issuing this ruling expeditiously given the scheduled four-day trial starting January 20, 2026;[11]

WHEREAS, Delaware Rule of Evidence 702 allows for the admission of expert opinion testimony when the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[;]"[12] "[t]his Court . . . has made it unmistakably clear that it is improper for witnesses to opine on legal issues governed by Delaware law. It is within the exclusive province of this Court to determine such issues of domestic law[;]"[13] but "a damages expert is not responsible for proving causation[;]"[14] instead, "a damages expert focuses on quantifying the damages suffered[;]"[15]

WHEREAS, Delaware Courts have recognized that challenges to "the factual basis of an expert opinion goes to the credibility of the testimony, not the

---

[10] D.I. 195.

[11] D.I. 193.

[12] D.R.E. 702(a).

[13] *United Rentals, Inc. v. RAM Hldgs., Inc.*, 2007 WL 4465520, at *1 (Del. Ch. Dec. 13, 2007) (footnotes omitted); *accord Itek Corp. v. Chi. Aerial Indus., Inc.*, 274 A.2d 141, 143 (Del. 1971) ("testimony from an expert is inadmissible if it expresses the expert's opinion concerning applicable domestic law. The reason, of course, is that it is exclusively within the province of the trial judge to determine issues of domestic law and to instruct the jury concerning them.").

[14] *Beard Research, Inc. v. Kates*, 8 A.3d 573, 614 (Del. Ch. 2010).

[15] *Id.*

admissibility, and it is for the opposing party to challenge the factual basis of the expert opinion on cross-examination[;]"[16] further, "[i]n a bench trial such as this one, a motion in limine to exclude an expert rarely will be productive. The better approach is generally for the court to allow the expert to testify, then evaluate the opinion following cross-examination. The exception is if it were obvious that an expert's report had no basis whatsoever[;]"[17]

     **IT IS HEREBY ORDERED** this 21st day of November 2025, as follows:

1.     The Motion is **DENIED**.

2.     Mr. Thompson's qualifications are not in dispute; Mr. Thompson plainly qualifies as an expert and, through his report, he uses his financial expertise to prepare summaries and charts that show potential damages resulting from purportedly lost profits. The report, and the documents on which Mr. Thompson relies, illustrate that his financial calculations are not without a reliable basis.[18]

---

[16] *Perry v. Berkley*, 996 A.2d 1262, 1271 (Del. 2010); *see also Daubert v. Merrell Dow Pharm., Inc.*, 508 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

[17] *In re Altaba, Inc.*, 2021 WL 1351240, at *1 (Del. Ch. Apr. 9, 2021) (ORDER) (internal citations omitted).

[18] There are, however, some asides in Mr. Thompson's report that arguably cross the line into something more than financial calculations. For example, Mr. Thompson purports to have "determined that shortly after the Defendants' departures, there was a material disruption to the referral sources resulting in lost profits to Caring People." Mot., Ex. 2, p. 2–3. He also, at one point, points to a table and contends: "This further indicates that East and/or Devine were benefitting from their competition with Caring People." *Id.* at 16. He also explains that he "analyzed the economic damages caused to Caring People from the

3.     The report makes clear that Mr. Thompson assumes liability and causation. Mr. Thompson further assumes that 100% of the Plaintiffs' decline in revenue from referral sources in New York and New Jersey was caused by the alleged competitive conduct. These limitations set a high bar which leaves me questioning whether Mr. Thompson's testimony and report will come into serious play, but they do not render the financial calculations so unsupported or untethered as to warrant exclusion pre-trial.[19]

---

solicitation of referral sources by the Defendants." *Id.* at 17. And, in an explanatory footnote, he represents: "This table serves as a second confirmation of the impact to Caring People's referral source network caused by Defendants' actions." *Id.* at 24, n.37. The way in which these statements are phrased could be seen as opining on liability or causation; holding Mr. Thompson and the Plaintiffs to their word, I will read them as part of his overall assumptions.

I can also appreciate the concern about the geographic locations selected for calculation. Mr. Thompson explains that he "determine[d] which geographic locations may have been impacted by the Defendants' actions." *Id.* at 20. This determination is no substitute for proof of that impact (liability and causation) at trial.

I also agree that Mr. Thompson is not being proffered as an expert in the home healthcare industry, which calls into some question the weight I should accord, for example, Appendix D to his expert report, which addresses economic and industry outlooks.

I list these as examples, only; Mr. Thompson will be subject, I am sure, to rigorous cross-examination building on the additional lines of inquiry addressed in detail at his deposition. That exercise will assist me in determining the weight and credibility to give his opinions and conclusions.

[19] The authority relied upon by East does not move the needle. The non-Delaware authority is non-binding and ultimately unpersuasive with the rich binding authority to the contrary. The post-trial Delaware authority supports denying the Motion and having Mr. Thompson's opinions tested at trial. *See, e.g.*, *OptimisCorp v. Waite*, 2015 WL 5147038, at *81 (Del. Ch. Aug. 26, 2015), *aff'd*, 137 A.3d 970 (Del. 2016). The motion *in limine* rulings from this Court, like *In re Columbia Pipeline Grp., Inc. Merger Litig.*, reflect the Court's reluctance to exclude expert opinions that fall even within "a gray area," like here.

4. Because the concerns in the Motion go toward weight and credibility rather than admissibility, the Motion is denied.

5. This is a magistrate's report, and exceptions are stayed under Rule 144.

**IT IS SO ORDERED.**

/s/ Selena E. Molina
Senior Magistrate Judge

---

2022 WL 2902769, at *4-*5 (Del. Ch. July 14, 2022). And the opinions at issue here are materially different than those excluded in *In re Columbia Pipeline Grp., Inc. Merger Litig.* and *In re Walt Disney Co.*, 2004 WL 550750, at *1 (Del. Ch. Mar. 9, 2004).